UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

YUSEF ALLEN,

    Petitioner,

v.

CHARLES WARREN,

    Respondent.

Civ. No. 13-4304 (KM)

OPINION

**KEVIN MCNULTY, U.S.D.J.**

### I.     INTRODUCTION

The petitioner, Yusef Allen, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Presently pending before the Court is Mr. Allen's motion for a stay and abeyance of these proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). For the following reasons, that motion will be denied, except that the Court will reserve decision on the *Brady/Giglio* claim and order the government to make a supplemental submission.

### II.     BACKGROUND

Mr. Allen is currently serving a state sentence for murder and weapons convictions. The factual background giving rise to his convictions is as follows:

> On October 15, 1997 at around 6:00 a.m., Ruby Waller was approached by Lannie Silver near West Third Street and Lee Place in Plainfield. Silver was looking for a location to buy drugs and was escorted by Waller to the Mack House on Prescott Place where she regularly purchased crack-cocaine.
>
> Upon arriving at the "Mack House," Waller proceeded to the window at the front of the house and sat on a bench located in front of the window. The window shade was drawn. However, Waller placed an order for "four nickels" of crack-cocaine and slid $20

1

through the "cracked" portion of the window to a man she identified as "Ben." [FN 2] After receiving the drugs that she purchased, Waller stood and moved away from the window, allowing Silver to sit on the bench.

> [FN 2] Although she could not see his face, Waller testified that she could identify the voice of Ben McNeil, her "little cousin's father."

Silver then asked Ben, "[w]hat you got," at which point Ben "pulled the shade back and looked out the window" at Silver. After seeing Silver, Ben and defendant exited the house, and Ben yelled at Silver, "get the F out of here, [we] don't see drugs [here], what mother-f......" [FN 3, regarding jury selection, omitted] Silver tried to retreat from the porch with his hands in the air, repeating that he "just want[ed] to buy some drugs. However, defendant and Ben followed Silver, yelling at him and using profane language. According to Waller, at one point defendant stated, "[h]old up, I got something for this mother-f......" He then entered the Mack House and returned "a second" later holding a gun "in his hand, down on the side."

Upon seeing the defendant with a gun, Waller testified that she "ran" to her residence a short distance away. As she "approached the stop stairs" to the house, Waller heard a gunshot. Once inside the house she heard "several more" shots and "hear[d] the victim screaming."

After entering her apartment, Waller testified that she looked out a window from which she could view the intersection of West Third Street and Prescott Place. She saw Silver "trying to run" but fall to the ground after "the last shot hit him." Waller further testified that Silver tried to get up but could not and finally "crawled to the middle [of Prescott Place]" before collapsing. Waller indicated that the time between the first and last shots was "like a half second."

After witnessing the victim laying in the middle of the street, Waller saw Ben and defendant "running into the Mack office" located close to the house where she had purchased drugs earlier that morning. Waller immediately phoned 911 and reported the incident to the police.

Rhonda Whitfield, who was serving a sentence in the Middlesex Correctional Facility during trial, testified that she was "[g]oing to buy a bag," that morning and saw the victim "on the porch" of the Mack House, "[l]ike talking to the screen." Only one person is permitted on the porch of the Mack House at a time, so Whitfield

2

stayed on the street. As the victim was talking, defendant and "Marvin" came out of the house. Whitfield was "dope sick" and paying "no mind," but "knew something wasn't right." She started to leave the area to buy drugs elsewhere when the defendant and Marvin began "yelling" at the victim, who was "trying to walk" away. As the victim walked away, defendant was "running behind the guy," holding an object to his side. Whitfield subsequently heard what she thought were "fire-crackers."

Whitfield further testified to having been in an automobile accident subsequent to the date of the shooting and that she had experienced some memory loss due to "head trauma" suffered in the accident. [FN 4]

> [FN 4] Defendant argued that he was "incredulous[ly]" not informed of the accident and related memory loss until that fact was brought out during cross-examination at trial. The prosecutor stated that he was told Whitfield had "hurt her head" but "was not aware of any type of failure to remember the incident." To support its position, an investigator testified before the judge, outside the presence of the jury and at the end of the trial, he interviewed Whitfield with the Assistant Prosecutor at the Middlesex County Jail four days before trial, and "[s]he mentioned that she banged her head." According to the investigator's testimony, Whitfield said nothing about a "memory loss," a related hospitalization, or "being unable to remember the incidents."

Bobby Harris, a high school student, testified on defendant's behalf that, while he was walking his dog on the morning in question, he heard shots and saw that "dude about to fall." He turned around, ran home, but saw a white car "ride pas[t]." [FN 5] The car drove past Harris about fifteen to twenty minutes later, but he did not look inside when an occupant yelled to him.

> [FN 5] Waller also saw a van at the scene. However, she described the van as being blue and testified that it swerved to avoid hitting the victim as he lay in the street.

Cynthia Harrison testified for defendant at she saw the victim with a male named John Korman minutes prior to the shooting. Silver

3

>   asked her "where to find cocaine," and she gave them directions to "the corner of Prescott."

*State v. Allen*, 337 N.J. Super. 259, 766 A.2d 1168, 1170-71 (N.J. Super. Ct. App. Div. 2001).

The Appellate Division affirmed the judgment of conviction, but remanded for imposition of a corrected sentence of life imprisonment with thirty years' parole ineligibility. *See id.* at 1170. Mr. Allen's application for post-conviction relief was denied.

In July 2013, this Court received this federal habeas petition. The petition raised nineteen claims:

1. The prosecutor transgressed all limits of propriety throughout the entire trial, denying the defendant his federal and state constitutional right to a fair trial.

2. The trial court erred in failing to grant a judgment of acquittal as no reasonable jury could have found that the State had proven its case beyond a reasonable doubt based on the admissible evidence.

3. Defendant was denied his right to a fair trial and his right to due process of law when the trial court denied his motion for a mistrial.

4. Defendant was denied his Sixth Amendment right to effective assistance of trial counsel: (A) Defense counsel failed to accept a mistrial after the trial court had conceded to granting defendant's request for a mistrial after numerous prejudicial events had transpired at trial; (B) Counsel failed to investigate and call as a witness, Mr. John Korman, who would have testified that defendant was not the person he saw shoot Mr. Lannie Silver; (C) Counsel failed to request a mistrial for the Brady violation; and (D) Counsel failed to call an expert witness to testify to the affects cocaine can have on a person's perception.

5. Defendant was denied effective assistance of appellate counsel guaranteed by the Sixth Amendment of the United States Constitution.

6. The jury's general verdict of murder must be vacated because one of the predicates for conviction (knowingly causing serious bodily injury, which resulted in death) is indistinguishable from the conduct proscribed by the statute defining aggravated and reckless manslaughter.

7. The prosecutor's misconduct was so heinous it violated defendant's federal and state right to a fair trial.

8. An evidentiary hearing should be granted to determine the effect of the newly discovered evidence.

9. Trial attorney was ineffective in not bringing in a witness to show effects of cocaine on a person's ability to perceive.

10. Defendant was deprived of the effective assistance of trial, appellate and post-conviction relief counsels.

11. The court misapplied the applicable legal standards in denying post-conviction relief based upon newly discovered evidence because the defendant satisfied his burden to show a probability that a new jury would find him not guilty of murder.

12. The order denying post-conviction relief should be reversed and the defendant's convictions vacated because trial counsel's failure to accept the trial court's offer of a mistrial as a result of the prosecutor's misconduct satisfied the first prong of the Strickland/Fritz test for ineffective assistance of counsel and the ensuing prejudice to the defendant satisfied the second prong of the test and appellate counsel was ineffective in failing to raise this issue on appeal.

13. The order denying post-conviction relief ["PCR"] should be reversed because the court's refusal to recuse itself denied defendant his right to a fairly conducted PCR hearing.

14. The trial court's ruling that defendant was not deprived of his Sixth Amendment right to effective assistance of counsel and undivided loyalties was not supported by sufficient credible evidence in the record, and constituted an abuse of discretion, therefore, the decision should be vacated and the warranted relief should be entered.

15. The post-conviction court abused its discretion and applied an erroneous standard of review when addressing the new trial motion claim for which his case was remanded by the Appellate Division.

16. Defendant was subjected to ineffective assistance of counsel on remand and a conflict of interest by divided loyalties by counsel's failure to consult with defendant, and to address the claims defendant wished to have addressed deprived defendant of a fair hearing.

17. Newly discovered evidence reveals that the state's chief witness, Ruby Waller, knowingly lied at defendant's trial, therefore, the defendant's conviction should be reversed.

18. The motion court misapplied its discretion in denying post-conviction relief because it failed to consider the impact that the newly discovered had on the integrity of the defendant's conviction.

19. The post-conviction court abused its discretion and misapplied the law and the facts during the newly discovered evidence hearing and improperly denied defendant's motion for a new trial, thereby violating his rights to due process of law and a fair trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Paragraphs 10 of the New Jersey Constitution.

The Court issued its standard notice pursuant to *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), instructing Mr. Allen to choose whether he wished to proceed with his habeas petition as-is or withdraw it and file a new petition including all his claims. Mr. Allen responded that he wished to stay this habeas petition and return to state court to exhaust two claims: a general ineffective assistance of counsel claim and a *Brady* claim that the prosecutor withheld exculpatory evidence from the grand jury. *See Brady v. Maryland*, 373 U.S. 83 (1963). Finding the response ambiguous, on March 24, 2014, I issued a second order requiring Mr. Allen either (a) to state that he was asking to continue with the nineteen claims in his habeas petition or else (b) make the necessary showing to support a stay of the petition so that he could pursue the two unexhausted claims in state court. (*See* Dkt. No. 5.)

On April 3, 2014, the Court received a document from Mr. Allen entitled "Formal request for a stay." (Dkt. No. 6.) This cited the two unexhausted claims identified earlier, and also identified a third claim that the prosecutor committed a *Brady/Giglio* violation by failing to disclose a prior conviction of Waller, the prosecution's chief witness.

On April 4, 2014, the Court denied Mr. Allen's request for a stay. (*See* Dkt. Nos. 7 & 8.) However, in a document dated April 2, 2014, and received by this Court on April 8, 2014, Mr. Allen supplemented his request for a stay. (*See* Dkt. No. 10.) That April 8, 2014 filing included a statement of reasons a stay would be warranted, and also provide further details about the unexhausted claims. This time, Mr. Allen described the unexhausted claims as follows:

1. Prosecutor committed misconduct by withholding clearly exculpatory evidence from the grand jury and aiding the state's chief witness in giving false testimony to the grand jury, thereby violating petitioner's right to a fair trial as guaranteed [by] the Sixth and Fourteenth Amendment of the United States Constitution and Article I Paragraph 10 of the New Jersey Constitution.

2. The petitioner was denied his right to effective assistance of counsel by: (1) counsel's failure to investigate his alibi defense; (2) erroneously advising petitioner not to testify at trial; and (3) cumulative error.

6

3. *Brady* claim for failing to disclose witness Waller's plea bargain agreement arising from her testimony in the trial of Riccardo Bradley on April 19, 1991 [the "*Brady/Giglio* claim"].

Because it appeared that lag time in the mails had deprived the Court of a full statement of Mr. Allen's arguments,[1] I vacated the April 4, 2014 Opinion and Order that had denied Mr. Allen's stay request. I ordered respondent to file a brief in opposition, which respondent did, and Mr. Allen filed a reply. The motion for a stay and abeyance of these habeas proceedings is now ripe for decision.

### III.   DISCUSSION

A. <u>Stay and Abeyance Standard</u>

A state prisoner applying for a writ of habeas corpus under § 2254 in federal court must first "exhaust[ ] the remedies available in the courts of the State," unless "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1); *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982). A petitioner must exhaust state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction relief proceedings. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (announcing the rule "requiring state prisoners to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

---

[1] Actually two pairs of filings crossed in the mails. Mr. Allen states that he submitted his request for stay (received April 3, 2014) without the benefit of having received the court's March 24, 2014 order. When the court denied the April 3 request for stay on April 4, 2014, it did not have the benefit of Mr. Allen's supplemental stay submission, dated April 3 but not received until April 8, 2014.

7

Recognizing the complexities that face prisoners who must exhaust state remedies while complying with the one-year statute of limitations period, *see* 28 U.S.C. § 2244(d)(1), the United States Court of Appeals for the Third Circuit has held that "[s]taying a habeas petition pending exhaustion of state remedies is a permissible way to avoid barring from federal court a petition who timely files a mixed petition [containing both exhausted and unexhausted claims]." *Crews v. Horn*, 360 F.3d 146, 151 (3d Cir. 2004). Indeed, said the Court of Appeals, "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." *Id.* at 154.

Since *Crews*, however, the United States Supreme Court has defined the circumstances under which a stay should be issued as narrow and limited:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines that there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. . . .

*Rhines*, 544 U.S. at 277-78 (2005). Conversely, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.*

B. <u>Mr. Allen's Claims</u>

Mr. Allen seeks a stay and abeyance of these proceedings in order to exhaust three sets of claims. These will be analyzed separately under *Rhines* in order to determine whether Allen had "good cause" for failing to raise them earlier, and whether they are "meritless."

8

i.  *Prosecutorial Misconduct – Withholding Exculpatory Evidence from Grand Jury*

Mr. Allen first seeks a stay so that he can exhaust in state court his claim that the prosecutor committed misconduct by withholding exculpatory evidence from the grand jury. Mr. Allen asserts that Waller testified in a separate federal case (*United States v. Mack*) that she did not see him shoot the victim. In the grand jury that indicted Allen, however, the prosecutor allegedly presented evidence that Waller did see him shoot the victim. This, he says, constituted misconduct before the grand jury: "The misconduct of the prosecutor to lead the grand jury to believe that Ms. Waller witnesses the shooting is misleading as well as false in its totality." (Dkt. No. 10 at p. 2)[2]

Mr. Allen fails to show good cause for failing to raise this claim earlier. By his own account, Mr. Allen learned of this additional *Mack* trial testimony on November 11, 2009, and received the transcripts from the *Mack* trial on August 12, 2010.[3] This petition was filed nearly three years later, in July 2013, well outside the one-year limitations period. Mr. Allen had the ability to pursue this claim earlier, if only in his state post-conviction relief proceedings. The necessary showing of good cause is lacking.

In addition, Mr. Allen has not carried his burden of showing that the claim possesses some merit. The alleged prosecutorial misconduct consists of failure to present exculpatory evidence to the grand jury. As a matter of federal constitutional law, however, "prosecutors have no legal duty to present exculpatory evidence to the grand jury." *See United States v. Ramos*, Crim. No. 08-274-02, 2014 WL 3808935, at *4 (E.D. Pa. July 28, 2014) (citing *United States v.*

---

[2]  This claim seems to be confined to the grand jury proceedings. According to the Appellate Division's summary of the facts, quoted at pp. 3-4 above, Waller did not testify *at Allen's trial* that she saw Allen fire the gun.

[3]  In PCR proceedings, Mr. Allen did make the related claim that Waller provided inconsistent testimony at the two trials. Oral argument on that issue in the New Jersey Superior Court, Law Division, was conducted on July 12, 2011, well after petitioner possessed the Mack trial transcript. And of course Allen delayed ten years before even seeking and obtaining that transcript. (Dkt. No. 19-1 at 6-7)

9

*Williams*, 504 U.S. 36, 52 (1992)); *see also United States v. Minerd*, 299 F. App'x 110, 112 n.1 (3d Cir. 2008) (an indictment may not be dismissed based on government's failure to present exculpatory evidence to the grand jury); *Royal v. Balicki*, No. 07-5234, 2009 WL 137335, at *14 (D.N.J. Jan. 20, 2009) ("[T]here is no duty imposed upon the state by the United States Constitution to present exculpatory evidence to a grand jury.") (citations omitted).

As to this prosecutorial misconduct claim, then, Mr. Allen has failed to show good cause for his failure to exhaust, and the claim in any event is meritless as a matter of law.

ii. *Ineffective Assistance of Counsel*

Mr. Allen additionally seeks a stay so that he can pursue in state court an unexhausted ineffective assistance of counsel claim, which has three subparts: (a) counsel failed to investigate his alibi witness and put forth an alibi defense; (b) counsel erroneously advised him not to testify at trial; and (c) cumulative error.

a. <u>Failure to investigate and pursue alibi defense</u>

Mr. Allen claims that counsel failed to investigate and pursue an available alibi defense.

There is no showing of good cause for failing to raise this claim earlier. In his April 8, 2014 filing, Mr. Allen admits that his trial counsel was well aware of his alibi witness, Ben McNeil, at the time of trial. Mr. Allen knew by the end of trial, at the latest, that his counsel had chosen not to call McNeil. If that constituted ineffective assistance, Allen was free to raise such a claim at any time. There is no showing of good cause for his failure to do so.

In his reply brief on this stay motion, Mr. Allen also appears to argue that state post-conviction relief counsel was ineffective for failing to press the alibi issue. Such a claim, to the extend it may have been intended, would be legally meritless. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction

proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Poole v. New Jersey*, No. 09-1923, 2010 WL 2952118, at *11 (D.N.J. July 21, 2010) ("Petitioner's claim regarding ineffective assistance of counsel by PCR counsel is not cognizable in a habeas claim.") (citation omitted).

Ineffective assistance in relation to the alibi witness does not warrant a stay and abeyance of these federal habeas proceedings.

    b. <u>Erroneous advice not to testify</u>

Mr. Allen states that he wished to testify at trial, but that trial counsel told him his prior convictions would be used against him and make him look like a "bad guy." Allen seeks a stay so that he can exhaust his claim that trial counsel's advice to refrain from testifying was ineffective.

There is no showing of good cause. Obviously Mr. Allen has been aware of the facts underlying this claim since the time of his trial. He suggests no reason that it could not have been pursued before, *e.g.*, in his state post-conviction relief proceedings. This claim, too, furnishes no basis for a stay and abeyance of this federal habeas action.

    c. <u>Cumulative error</u>

A claim of cumulative error "must be presented to the state courts before it may provide a basis for habeas relief." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 543 (3d Cir. 2014) (citation omitted). Mr. Allen seeks to bring a cumulative ineffective assistance of counsel claim. Again, he suggests no basis for a finding of good cause for failure to exhaust this claim previously.

Accordingly, then, none of the three ineffective assistance claims warrants a stay here.

     *iii.*    *Brady/Giglio Violation – Waller's Prior Conviction*

Finally, Mr. Allen claims that he has learned of a prior conviction of Waller that was not turned over to him so that he could use it to impeach Waller's credibility at trial. *See Giglio v. United States,* 405 U.S. 150 (1972); *Brady v. Maryland,* 373 U.S. 83 (1963). Mr. Allen claims he did not become aware of this prior conviction until March 22, 2014. It appears to involve a plea bargain agreement providing that Waller would serve a three year sentence (concurrent with a sentence for violation of probation) for a matter arising from her testimony in the trial of Riccardo Bradley on April 19, 1991. The nature of the conviction is not clearly stated.

A violation under *Brady* "occurs if: (1) the evidence at issue is favorable to the accused, because either it is exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn,* 642 F.3d 126, 133 (3d Cir. 2011) (citations omitted). A prosecutor's failure to disclose a witness's prior conviction can constitute a *Brady* violation. *See Wilson v. Beard,* 589 F.3d 651, 665 (3d Cir. 2009) (citations omitted). The withheld evidence must, however, be material. *See United States v. Veksler,* 62 F.3d 544, 550 (3d Cir. 1995). The United States Court of Appeals for the Third Circuit has explained the materiality requirement as follows:

> Under *Brady*, "[e]vidence is material if there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different." *Wilson,* 589 F.3d at 665 (citing *Giglio* [*v. United States*], 405 U.S. [150,] 154 [(1972)]). "[T]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A reasonable probability of a different result is shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* (quoting *Kyles v. Whitley,* 514 U.S. 419, 434 (1995)) (internal quotation marks omitted).

12

*Breakiron*, 642 F.3d at 133-34.

Respondent argues in part that any failure to disclose would not have been material because it did not rise to the level of depriving Mr. Allen of a fair trial. I do not have a sufficient evidentiary context to determine materiality. To begin with, the nature of the prior conviction itself is unclear. I have no more than a general statement of the scope of other impeachment evidence used against Waller at trial. The respondent did not attach a copy of the transcript of Waller's cross-examination. The respondent did not identify, with specific references to the trial transcript, each piece of impeachment evidence used against Waller by the defense. Without such an evidentiary context, I cannot make a reasoned assessment of respondent's argument that evidence of an additional Waller conviction was not "material." Accordingly, the respondent shall be ordered to file a supplemental response on this point.

## IV. CONCLUSION

For the foregoing reasons, Mr. Allen's request for a stay and abeyance of this case will be denied, with one exception. The Court reserves judgment on whether a stay should be issued on Mr. Allen's *Brady* claim. The respondent shall be ordered to file supplemental response to the request for a stay on the *Brady* claim. An appropriate order will be entered.

Dated: January 20, 2015

_____
KEVIN MCNULTY
United States District Judge