UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

YUSEF ALLEN,

    Petitioner,

v.

CHARLES WARREN,

    Respondent.

Civ. No. 13-4304 (KM)

OPINION

**KEVIN MCNULTY, U.S.D.J.**

## I. INTRODUCTION

The petitioner, Yusef Allen, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Allen filed a motion for a stay and abeyance of this habeas case so that he could exhaust certain additional claims in the state courts. On January 20, 2015, I denied that request in part. However, I reserved judgment on whether a stay should issue so that Mr. Allen could exhaust his claim that the prosecution withheld exculpatory material in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) claim. On that issue, Respondent was ordered to supplement his response to the motion for stay and abeyance, which he has done. For the following reasons, Mr. Allen's request for a stay so that he can exhaust his *Brady/Giglio* claim will be denied and the respondent will be ordered to file a response to the habeas petition. The discussion herein assumes familiarity with my earlier opinion. (Dkt. No. 22)

## II. BACKGROUND

The factual background regarding Mr. Allen's state conviction was laid out in the January 20, 2015 Opinion in this case. *See Allen v. Warren*, No. 13-4304, Dkt. No. 22, 2015 WL 268829

(D.N.J. Jan. 20, 2015). Mr. Allen was convicted after a jury trial of murder and weapons charges. The Appellate Division affirmed the judgment of conviction but remanded the matter for imposition of a corrected sentence of life imprisonment with thirty years of parole ineligibility. Mr. Allen's application for post-conviction relief was denied.

In July, 2013, this Court received Mr. Allen's federal habeas petition, which asserted some nineteen grounds for relief. Subsequently, Mr. Allen requested a stay so that he could return to state court and exhaust his remedies as to certain of the claims. More specifically, Mr. Allen described his unexhausted claims as follows:

1. Prosecutor committed misconduct by withholding clearly exculpatory evidence from the grand jury and aiding the state's chief witness in giving false testimony to the grand jury, thereby violating petitioner's right to a fair trial as guaranteed [by] the Sixth and Fourteenth Amendment of the United States Constitution and Article I Paragraph 10 of the New Jersey Constitution.

2. The petitioner was denied his right to effective assistance of counsel by: (1) counsel's failure to investigate his alibi defense; (2) erroneously advising petitioner not to testify at trial; and (3) cumulative error.

3. *Brady* claim for failing to disclose witness Waller's plea bargain agreement arising from her testimony in the trial of Riccardo Bradley on April 19, 1991 [the "*Brady/Giglio*" claim].

On January 20, 2015, I denied Mr. Allen's request for a stay on the first two issues, but reserved judgment on the *Brady/Giglio* issue. I noted that Mr. Allen was claiming that the prosecution failed disclose a prior conviction and plea bargain of a key prosecution witness,

Ruby Waller. That April 1991 conviction of Waller, Allen claims, could have been used to impeach her credibility at trial. In reserving judgment on this claim, I explained as follows:

> I do not have a sufficient evidentiary context to determine materiality. To begin with, the nature of the prior conviction itself is unclear. I have no more than a general statement of the scope of other impeachment evidence used against Waller at trial. The respondent did not attach a copy of the transcript of Waller's cross-examination. The respondent did not identify, with specific references to the trial transcript, each piece of impeachment evidence used against Waller by the defense. Without such an evidentiary context, I cannot make a reasoned assessment of respondent's argument that evidence of an additional Waller conviction was not "material." Accordingly, the respondent shall be ordered to file a supplemental response on this point.

*Allen*, 2015 WL 268829, at *8.

On February 24, 2015, Respondent filed a supplemental response directed solely to the *Brady/Giglio* claim. That response includes evidence that Waller's April 1991 conviction was presented to the jury at trial, and that defense counsel was aware of it before to trial. Attached, as requested, is a copy of the transcript of Waller's trial testimony. Finally, Respondent asserts that Mr. Allen failed to show prejudice.

### III. DISCUSSION

#### A. Stay and Abeyance Standard

A state prisoner applying for a writ of habeas corpus under § 2254 in federal court must first "exhaust[ ] the remedies available in the courts of the State," unless "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1); *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982). A petitioner must exhaust state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction relief proceedings. *See, e.g., O'Sullivan v. Boerckel*,

3

526 U.S. 838, 847 (1999) (announcing the rule "requiring state prisoners to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

An attempt to exhaust all state remedies may place a habeas petition in jeopardy under the one-year statute of limitations set out in § 2244(d)(1). In response, the United States Court of Appeals for the Third Circuit has held that "[s]taying a habeas petition pending exhaustion of state remedies is a permissible way to avoid barring from federal court a petition who timely files a mixed petition [containing both exhausted and unexhausted claims]." *Crews v. Horn*, 360 F.3d 146, 151 (3d Cir. 2004). Indeed, the Third Circuit has stated that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." *Id.* at 154.

Since *Crews*, however, the United States Supreme Court has explained when a stay should be issued:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines that there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. . . .
>
> [I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Rhines*, 544 U.S. at 277-78 (2005). Conversely, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.*

### B. *Brady/Giglio* Claim

Mr. Allen claims that he was not in possession of a plea bargain agreement of one of the prosecution's leading witnesses against him, Ruby Waller. More specifically, Mr. Allen states that it was not until "3/22/14 [that] I was in receipt of the disposition and plea bargain agreement of Ruby Dean Waller, in which she received 3 yrs. sentence in state prison to run concurrently with violation of probation, for testifying in the trial of Riccardo Bradley on 4/19/91." (Dkt. No. 10 at p. 5.)

If a claim is not potentially meritorious, then a stay should not issue. *See Rhines*, 544 U.S. at 277-78. This Court laid out the relevant standard for a *Brady* claim in the January 20, 2015 Opinion:

> A violation under *Brady* "occurs if: (1) the evidence at issue is favorable to the accused, because either it is exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011) (citations omitted). A prosecutor's failure to disclose a witness' prior conviction can constitute a *Brady* violation as it constitutes impeachment evidence. *See Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009) (citations omitted). Not every failure to disclose favorable evidence to the defense requires a reversal of the conviction as the evidence must be material. *See United States v. Veksler*, 62 F.3d 544, 550 (3d Cir. 1995). As the United States Court of Appeals for the Third Circuit has explained:
>
>> Under *Brady*, "[e]vidence is material if there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different." *Wilson*, 589 F.3d at 665 (citing

5

> *Giglio* [*v. United States*], 405 U.S. [150,] 154
> [(1972)]). "[T]he question is not whether the
> defendant would more likely than not have received
> a different verdict with the evidence, but whether in
> its absence he received a fair trial, understood as a
> trial resulting in a verdict worthy of confidence. A
> reasonable probability of a different result is shown
> when the government's evidentiary suppression
> undermines confidence in the outcome of the trial.'"
> *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434
> (1995)) (internal quotation marks omitted).
>
> *Breakiron*, 642 F.3d at 133-34.

*Allen*, 2015 WL 268829, at *8.

The record provided by respondent establishes that Mr. Allen's counsel was notified about Waller's April 1991 conviction.[1] Indeed, on October 9, 1998, the prosecutor provided a printout of Allen's criminal history to his trial attorney. (*See* Dkt. No. 28-9.) Among the listed convictions was the April 1991 conviction that Mr. Allen raises here. The records supplied to Mr. Allen's trial attorney show that Waller was found guilty of cocaine possession and sentenced to three years' confinement. (*See* Dkt. No. 28-10 at p. 3.) This is not a case where the prosecution failed to disclose Waller's April 1991 conviction and sentence, or whitewashed her background.

At trial, on direct examination, the prosecutor elicited the following: (a) On March 30, 1990, Waller was convicted of two counts of cocaine possession and received concurrent sentences of three years' probation (Tr. 123-24); (b) On April 19, 1991, Waller was convicted of cocaine possession and received a three-year sentence of imprisonment (Tr. 124); (c) On June 21, 1998 (after the murder but before the trial), Waller was arrested for shoplifting.

---

[1] For ease of reference, the transcript of Ruby Waller's testimony will be cited as "Tr. __." It may be found on the docket as Documents 28-2 through 28-7.

The evidence was undisputed that the murder took place at a house that functioned as an illegal drug market. Waller admitted she was using crack three or four times a day at the time of the murder. (Tr. 129-30, 173-74) Indeed, she was engaged in a drug purchase at or about the time she observed the events. (Tr. 36-45)

So the April 1991 drug conviction (among others) was indisputably revealed to the defense, as was Waller's history of drug use. But Mr. Allen's argument may be more nuanced. While the prosecution disclosed the 1991 conviction itself, there is no evidence that it revealed that this conviction resulted from a cooperating plea bargain.

One issue must be distinguished here. Certainly, if Waller had testified *against Allen* as part of a plea bargain, failure to disclose that fact would violate *Giglio*, 405 U.S. at 154-55. But there is no evidence or allegation that Waller came forward or testified in the murder case as the result of any deal for leniency. Waller was a volunteer: In 1997, when she learned that the person she had brought to the house to purchase drugs had died of his wounds, she telephoned the police and agreed to make a statement. The shoplifting charge occurred in 1998, well after Waller had come forward. True, the municipal court shoplifting charge was pending at the time of the murder trial, but Waller had not consulted with counsel or spoken to the municipal prosecutor about it. She had not made any arrangement to obtain any benefit in connection with her testimony in the murder case. (Tr. 124-25)[2]

I assume without deciding that Waller's plea bargain in 1991 involved leniency in connection with her testimony in another case. And it has been conclusively established that the

---

[2] Defense counsel argued to the court that, although he might have painted Waller as a drug addict and a prostitute, he was not claiming that she was testifying in return for some benefit. He therefore objected to the prosecution's eliciting that she had come forward voluntarily, on the ground that the prosecutor was impermissibly bolstering his own witness. The court sustained the objection. (Tr. 124-27) Although the jury was asked to disregard this information, it cannot be said that the prosecutor was withholding it from the defense.

7

prosecution turned over records of the 1991 conviction. Would the additional disclosure that the 1991 conviction resulted from a cooperating plea agreement have helped cast doubt on Allen's conviction for the 1997 murder? At most, the earlier plea deal could have been used to show that Waller had a general awareness that such a deal could be struck. But unless it can be linked in some way to a promise of leniency in return for testimony in *Allen*'s murder case, it has no significance. Testimony in exchange for leniency was not pursued as a theme in cross-examination at Allen's trial. Indeed, defense counsel made a sound strategic decision to focus his attack elsewhere, on Waller's lifestyle. To pursue the "bought testimony" theme would only further open up the uncontradicted evidence that Waller came forward voluntarily, at a time when no charge was pending. (*See* n.2, *supra*.) At any rate, there is no evidence that Waller's testimony about the 1997 murder involved a leniency deal of any kind, let alone one that related back to the 1991 plea.

There is no reasonable probability that the additional disclosure that Waller's April 1991 conviction was procured through a cooperating plea bargain would have changed the result of Mr. Allen's trial. I find that this claim is plainly meritless, and I deny the application for a stay and abeyance to permit Allen to exhaust it in state court.

I discuss one final matter raised by Respondent's supplemental submission:

> It should be noted that the trial prosecutor ran Ms. Waller's case list in Promis/Gavel on February 10, 2015. At this time it showed one additional conviction for narcotics in which Ms. Waller entered a guilty plea and was sentenced on May 19, 1989. However, this conviction never appeared on the prior criminal history reports. Presumably, the conviction stems from "Arrest 001" listed in Ms. Waller's criminal history for which no disposition was indicated.

(Dkt. No. 28-1 at p. 2-3.) Mr. Allen makes no argument based on this 1989 narcotics conviction, assuming that is what it was. Out of caution, however, I state that I would not find such evidence

8

material. The jury was well aware of Waller's unsavory history of drug use and criminal convictions, based on her testimony on direct and cross examination at trial. Adding one older conviction to the mix would have been, at best, cumulative. *See United States v. Friedman*, 658 F.3d 342, 358 (3d Cir. 2011) ("'[I]mpeachment evidence, if cumulative of *similar* impeachment evidence used at trial . . . is superfluous and therefore has little, if any, probative value.'") (quoting *Lambert v. Beard*, 633 F.3d 126, 133 (3d Cir. 2011)).

## IV.  CONCLUSION

For the foregoing reasons, the petitioner's request for a stay and abeyance based on his *Brady/Giglio* claim will be denied. That, in combination with my earlier opinion, disposes of all outstanding stay requests. Having screened the petition, I will order the respondent to file an answer to it as filed.

Dated: March 26, 2015

KEVIN MCNULTY
United States District Judge